# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**NORTH ATLANTIC**
**SECURITY COMPANY**

**VERSUS**

**FABIAN BLACHE, ET AL.**

CIVIL ACTION NO.

19-379-EWD (CONSENT)

## RULING AND ORDER ON MOTION FOR SUMMARY JUDGMENT

Plaintiff North Atlantic Security Company ("North Atlantic") sued Defendants Fabian Blache ("Blache") and Ritchie Rivers ("Rivers") for damages under 42 U.S.C. § 1983 and Louisiana state law relating to Blache's issuance of a "cease and desist order," imposition of a $9,5000 fine, "immediate revocation" of North Atlantic's private security license without a vote by the Louisiana State Board of Private Security Examiners ("Board") or a hearing, and contact with North Atlantic's clients advising them that North Atlantic's license had been revoked, all of which North Atlantic claims violated its constitutional right to due process under the Fourteenth Amendment of the United States Constitution, the Excessive Fines Clause of the Eighth Amendment of the United States Constitution, and similar provisions of the Louisiana Constitution. Before the Court is a Motion for Summary Judgment (the "Motion"),[1] filed by the only remaining defendant, Blache, the former Executive Secretary of the Board, seeking dismissal of all claims. North Atlantic opposes the Motion,[2] and Blache has filed a reply memorandum.[3] Oral argument is not necessary.[4] The Court has carefully considered the law, the facts and evidence

---

[1] R. Doc. 50. North Atlantic dismissed its claims against Rivers with prejudice. R. Docs. 37 & 38.
[2] R. Doc. 54.
[3] R. Doc. 55.
[4] *See* Local Civil Rule 78(b), which provides that oral argument is allowed only when ordered by the Court.

in the record, and the submissions of the parties.[5]

Because any rights under the Excessive Fines Clause of the Eighth Amendment were not clearly established at the time Blache levied a fine against North Atlantic, Blache is entitled to qualified immunity on this claim, which will be dismissed with prejudice. Similarly, because North Atlantic has not shown a clearly established federal right that Blache violated by sending the cease-and-desist order, Blache is entitled to qualified immunity on North Atlantic's due process claim related to the cease-and-desist order, which will also be dismissed with prejudice. Blache's Motion will be denied in all other respects.[6]

---

[5] Regardless of whether an exhibit is specifically cited in this Ruling, the Court has reviewed and considered all exhibits filed by the parties, including (1) Statement from the Office of the Governor regarding the appointment of Ritchie Rivers to the Board (R. Doc. 50-3, pp. 1-2); (2) Excerpts from the transcript of the Board's September 6, 2018 quarterly meeting (R. Doc. 50-3, pp. 3-9); (3) Declaration of Wendy Aldridge, Section Chief of Licensure for the Board (R. Doc. 50-3, pp. 10-11); (4) Declaration of Fabian Blache, III, former Executive Secretary for the Board, (R. Doc. 50-3, pp. 12-15), along with the following attachments: (A) October 16, 2017 Notice of Revocation of Company License sent to Delta Tactical, LLC ("Delta Tactical") (R. Doc. 50-3, pp. 16-18), (B) Excerpt of transcript of the Board's January 25, 2018 Special Board Meeting regarding Delta Tactical (R. Doc. 50-3, pp. 19-23), and (C) November 23, 2021 screenshot of the Board's Meeting Notices ranging from September 22, 2011 – October 19, 2022 (R. Doc. 50-3, pp. 24-26); (5) Affidavit and Certification of Louisiana Public Documents (R. Doc. 50-3, pp. 27-28), along with the following attachments: (A) August 10, 2017 Office of State Procurement ("OSP") Invitation to Bid on RFx 3000007199 (R. Doc. 50-4); (B) August 10, 2017 Responses to Invitation to Bid on RFx 3000007199 (R. Doc. 50-5, pp. 1-2 ), (C) various purchase orders (R. Doc. 50-5, pp. 13-15 , and August 23, 2018 OSP Invitation to Bid on RFX 3000001099 (R. Doc. 50-6, pp. 1-17); and (6) information regarding Gulf Coast Security Enterprises, LLC ("Gulf Coast Security") (R. Doc. 50-6, pp. 18-20). While the Court has reviewed and considered all exhibits, it is noted that documents that presumably exist and are relevant—and important—to the parties' claims and defenses, such as the cease-and-desist order and/or notice of revocation issued by Blache to North Atlantic, are absent from the summary judgment record and could not be considered by the Court. Additionally, while the transcript of the September 6, 2018 Board hearing, which is available online, is nearly 200 pages, only a fraction of the transcript was submitted by either party. *Compare* R. Doc. 50-3 (Excerpt of September 6, 2018 Hearing Transcript), at pp. 3-9, *with* the 191-page transcript of the September 6, 2018 hearing, available at: https://wwwcfprd.doa.louisiana.gov/boardsandcommissions/viewMeetingMinutes.cfm?board=32 (last accessed September 28, 2022). Any information contained in the full transcript that was not introduced into evidence by one of the parties in this case was not considered in this Ruling and Order.

[6] On August 26, 2019, the parties filed a Joint Consent to Jurisdiction by Magistrate Judge. R. Doc. 16. Thereafter, an Order of Reference was entered in this case referring this matter to the undersigned "for the conduct of all further proceedings and the entry of judgment in accordance with 28 USC 636(c)…." R. Doc. 23.

## I.   BACKGROUND

### A.    Summary of North Atlantic's Claims[7]

North Atlantic was a private security company, that possessed a license issued by the Board. North Atlantic also had contracts to perform private security services in Louisiana. On August 14, 2018, Joshua Lands ("Lands") was working as a security guard for North Atlantic. Acting on a tip from Rivers that Lands was working as an armed security guard even though his firearms certification lapsed a few days prior, Blache showed up unannounced at the site where Lands was working for North Atlantic to investigate. Blache confirmed that Lands was carrying a .38 revolver while working as an armed security guard for North Atlantic, although Lands' firearms certification lapsed three days prior, and that Lands was not carrying required paperwork.[8] The same day, Blache fined North Atlantic $9,500, issued an immediate cease-and-desist order and revocation of North Atlantic's license to operate in Louisiana, and notified North Atlantic's clients that North Atlantic's license had been revoked. Immediately, North Atlantic's clients began scrambling to find other security companies.[9]

Although North Atlantic's license revocation was later made effective on August 31, 2018 (allegedly at the request of the State), and Lands had refresher training for his weapon by August 15, 2018, by the end of August 2018, North Atlantic had been destroyed as a viable company in Louisiana because Blache had unilaterally revoked its license without a hearing or vote of the Board and had notified all its customers that North Atlantic could not work in Louisiana, which

---

[7] The Court previously ruled on Blache's Motion to Dismiss (R. Doc. 27). *See* R. Doc. 42. The "Background" and "Analysis" sections of the Ruling contain a comprehensive recitation of the allegations in North Atlantic's Amended Complaint (R. Doc. 25), the facts underlying this case, and the Louisiana laws, regulations, and administrative procedures regarding private security business and governance by the Board, all of which are incorporated into this Ruling by reference. *See id*. at Sections I & III(A).

[8] R. Doc. 25, ¶¶ 7-10.

[9] R. Doc. 25, ¶¶ 11-13.

cost North Atlantic millions of dollars in revenue without an opportunity to timely plead its case.[10] North Atlantic filed this suit, alleging that Blache's actions violated North Atlantic's constitutional rights to due process prior to deprivation of property and to be free from excessive fines.

## B.     Undisputed Material Facts

The Board is an "agency under the umbrella of the Department of Public Safety and Corrections" comprised of "nine unpaid, members appointed by the Governor" of Louisiana.[11] In addition to members, the Board has a "staff of administrative employees."[12] It is required to hire an Executive Secretary, who acts as the Board's chief administrator.[13] Blache served as the Board's Executive Secretary from 2016 to 2021, following longtime Executive Secretary Wayne Rogillio, who served in that capacity from 1995 to 2016.[14]

The Board may "only act during a properly noticed meeting in which a majority of its members are in attendance."[15] However, the Board is "authorized to adopt any rule, regulation, or bylaw deemed necessary and proper to regulate private security businesses, to provide for the efficient operation of the [B]oard, and otherwise discharge its duties and powers."[16] The Board's Executive Secretary has the "express authority to sign-off on cease-and-desist orders."[17] During their respective tenures as Executive Secretary, Rogillio and Blache issued cease-and-desist orders,

---

[10] R.Doc. 25, ¶¶ 15-17.

[11] R. Doc. 50-2 (Blache's Statement of Undisputed Material Facts ("SUMF"), at ¶¶ 1-2; R. Doc. 54-1 (North Atlantic's Responses to Statement of Material Facts ("SUMF Response"), at ¶¶ 1-2.

[12] R. Doc. 50-2, ¶ 7; R. Doc. 54-1, ¶ 7.

[13] R. Doc. 50-2, ¶ 9; R. Doc. 54-1, ¶ 9. Under La. R.S. § 37:3275, the Executive Secretary "shall perform such duties as may be prescribed by the [B]oard."

[14] R. Doc. 50-2, ¶¶ 10-11; R. Doc. 54-1, ¶¶ 10-11. Executive secretaries, like Blache, are prohibited from having a financial business interest in "security services investigative business, watch, guard, or patrol agency' while employed by the Board and 'for a period of five years thereafter.'" R. Doc. 50-2, ¶ 12; R. Doc. 54-1, ¶ 12. Blache contends that he "does not – and has never had – a business or financial interest in any company" owned/operated by Rivers or "any other person appointed to the Board during his employment," which North Atlantic denies for "lack of information." R. Doc. 50-2, ¶¶ 13-14; R. Doc. 54-1, ¶¶ 13-14. However, the parties agree that Blache "does not currently have a business or financial interest in any private security company." R. Doc. 50-2, ¶ 15; R. Doc. 54-1, ¶ 15.

[15] R. Doc. 50-2, ¶ 16; R. Doc. 54-1, ¶ 16.

[16] R. Doc. 50-2, ¶ 21; R. Doc. 54-1, ¶ 14.

[17] R. Doc. 50-2, ¶ 22; R. Doc. 54-1, ¶ 21.

rather than the Board, based on a "custom established during Rogillio's tenure."[18] Neither the Board (or its members) nor "anyone else" told Blache "that he did not have the general authority to issue cease-and-desist orders."[19] Relatedly, the "Board did not question Blache's authority" to issue a cease-and-desist order and/or revoke the license of a private security company, at least temporarily, when he did so in October 2017.[20]

Security officers who carry a firearm while on duty must complete a "refresher course" each year.[21] Security officers are required to carry their registration cards while on duty and to show them to any authorized Board representative or law enforcement office upon request.[22]

On August 14, 2018, Rivers, who, as a Board member, is "required to report possible rule violations to the [E]xecutive [S]ecretary," contacted Blache about a "possible rules violation involving Joshua Lands ("Lands")," an armed security guard working for both North Atlantic and Rivers Security.[23] Rivers "informed" Blache that Lands was working as an armed officer for North Atlantic on August 14, 2018, even though his "firearms registration lapsed on August 11, 2018."[24] That day, Blache "confirmed that Lands was working for North Atlantic as an armed security officer but was not authorized to work in that capacity," and he also "discovered that Lands was not carrying his registration card."[25]

The "state contracts held by North Atlantic in 2018 were awarded by OSP to Gulf Coast Security Enterprises, LLC," a Mississippi private security company formerly known as Showtime

---

[18] R. Doc. 50-2, ¶¶ 23-24; R. Doc. 54-1, ¶¶ 23-24.
[19] R. Doc. 50-2, ¶ 25; R. Doc. 54-1, ¶ 25.
[20] R. Doc. 50-2, ¶¶ 26-29; R. Doc. 54-1, ¶¶ 26-29.
[21] R. Doc. 50-2, ¶ 34; R. Doc. 54-1, ¶ 34.
[22] R. Doc. 50-2, ¶ 33; R. Doc. 54-1, ¶ 33.
[23] R. Doc. 50-2, ¶¶ 35-37 (cleaned up); R. Doc. 54-1, ¶¶ 35-37.
[24] R. Doc. 50-2, ¶ 38; R. Doc. 54-1, ¶ 38.
[25] R. Doc. 50-2, ¶ 39; R. Doc. 54-1, ¶ 39.

Bodyguard & Etc., LLC ("Showtime" or "Gulf Coast Security").[26] Blache did not award North Atlantic's contracts to another company.[27] Instead, OSP issued an "Invitation to Bid" on August 23, 2018, requiring anyone wanting to bid on North Atlantic's contracts to submit a bid by 2:00 p.m. that day.[28] North Atlantic's contracts were awarded to Gulf Coast Security, a private security company that Blache "does not – and has never had – a business or financial interest" in.[29]

On September 6, 2018, the Board held an administrative hearing, which involved testimony from several witnesses, including Blache and Rivers.[30] There is no evidence in the record as to the outcome of the Board hearing.

## II.    LAW AND ANALYSIS

### A.    Legal Standard for Summary Judgment

Pursuant to well-established legal principles, summary judgment is appropriate where there is no genuine disputed issue as to any material fact, such that the moving party is entitled to judgment as a matter of law.[31] "A 'material' fact is one that might affect the outcome of the suit under governing law,' and a fact issue is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."[32] A party moving for summary judgment must

---

[26] R. Doc. 50-2, ¶¶ 54-55 (cleaned up); R. Doc. 54-1, ¶¶ 54-55. "On August 10, 2017, OSP issued bid invitation seeking to contract with a private security company that would provide armed and unarmed security officers at approximately 30 sites operated statewide by the Louisiana Department of Health, the Department of Transportation, the Department of Children and Family Services, or the Department of Culture, Recreation, & Tourism." R. Doc. 50-2, ¶ 44; R. Doc. 54-1, ¶ 44. In response to the August 10, 2017 bid invitation, OSP received bids from four private security companies, including North Atlantic and Showtime. R. Doc. 50-2, ¶ 46; R. Doc. 54-1, ¶ 46. "As required by the Procurement Code, the contract described in the bid invitation issued on August 10, 2017, was awarded by OSP to North Atlantic which [OSP] determined to be the lowest responsive and responsible bidder." R. Doc. 50-2, ¶ 51; R. Doc. 54-1, ¶ 51.

[27] R. Doc. 50-2, ¶ 52; R. Doc. 54-1, ¶ 52.

[28] R. Doc. 50-2, ¶ 53; R. Doc. 54-1, ¶ 53. *See also* R. Doc. 50-6 (OSP's August 23, 2018 Invitation to Bid).

[29] R. Doc. 50-2, ¶¶ 52-56; R. Doc. 54-1, ¶¶ 52-56.

[30] R. Doc. 50-3, pp. 3-4.

[31] Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986).

[32] *McCullough v. Wright*, 824 Fed.Appx. 281, 284 (5th Cir. Sept. 9, 2020), quoting *Renwick v. PNK Lake Charles, L.L.C.*, 901 F.3d 605, 611 (5th Cir. 2018) (some internal quotations omitted).

explain the basis for the motion and identify those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, that show there is no genuine issue of material fact.[33] If the moving party carries its burden of proof, the opposing party must direct the court's attention to specific evidence in the record which demonstrates that the non-moving party can satisfy a reasonable jury that it is entitled to a verdict in its favor, *i.e.*, "there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[34] This burden is not satisfied by some metaphysical doubt as to alleged material facts, by unsworn and unsubstantiated assertions, by conclusory allegations, or by a mere scintilla of evidence.[35] Rather, Rule 56 mandates that summary judgment be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.[36] Summary judgment is appropriate in any case where the evidence is so weak or tenuous on essential facts that the evidence could not support a judgment in favor of the non-moving party.[37] In resolving a motion for summary judgment, the court must review the facts and inferences in the light most favorable to the non-moving party, and the court may not evaluate the credibility of witnesses, weigh the evidence, or resolve factual disputes.[38]

---

[33] *Celotex Corp.*, 477 U.S. at 322.
[34] *Anderson*, 477 U.S. at 249, citing *First National Bank of Arizona v. Cities Service Co. No. 23*, 391 U.S. 253, 288-89 (1968).
[35] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).
[36] *Celotex Corp.*, 477 U.S. at 323.
[37] *Little*, 37 F.3d at 1075.
[38] *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

**B. Blache is Entitled to Qualified Immunity as to the Issuance of the Cease-and-Desist Order**

Blache argues that he is entitled to qualified immunity on Plaintiff's procedural due process claims on several grounds.[39] Because qualified immunity attaches to an official's conduct, we must evaluate two different instances of Blache's conduct. The first is Blache's issuance of the cease-and-desist order to North Atlantic. The second is Blache's contact with North Atlantic's clients prior to a Board hearing, advising them that North Atlantic's license had been revoked. As to the former, Blache is entitled to qualified immunity. Fact issues preclude summary judgment as to the latter.

"'Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"[40] "'Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.'"[41] "Although '[the Supreme] Court's caselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.'"[42] "'In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law.'"[43] "An officer 'cannot be said to have violated a clearly established

---

[39] Blache also argues that he is entitled to absolute immunity. R. Doc. 50-1, pp. 12-13. His arguments in this Motion are similar to those previously rejected on Blache's Motion to Dismiss. *See*, R. Doc. 42. Blache has not established entitlement to absolute immunity for his conduct. Indeed, qualified immunity "'represents the norm'" for executive officers" …. *Buckley v. Fitzsimmons*, 509 U.S. 259, 268 (citations omitted) ("Most public officials are entitled only to qualified immunity … In most cases qualified immunity is sufficient to 'protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority.'"). As Blache is entitled to qualified immunity for issuing the cease-and-desist order, it is not necessary to reconsider his absolute immunity argument as to this conduct.

[40] *Kisela v. Hughes*, —— U.S. ——, 138 S.Ct. 1148, 1152, 200 L.Ed.2d 449 (2018) (per curiam), quoting *White v. Pauly*, 580 U.S. 73, 137 S.Ct. 548, 551, 196 L.Ed.2d 463 (2017) (per curiam) (alterations and internal quotation marks omitted).

[41] *Kisela*, 138 S.Ct. at 1152, quoting *Brosseau v. Haugen*, 543 U.S. 194, 198, 125 S. Ct. 596, 160 L.Ed.2d 583 (2004) (per curiam)).

[42] *Kisela*, 138 S.Ct. at 1152, quoting *White*, 137 S. Ct. at 551 (internal quotation marks omitted).

[43] *Id*.

right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it.'"[44] "That is a necessary part of the qualified-immunity standard[.]"[45] Controlling case law is not required, however, in "an obvious case."[46]

Because permits and licenses relate to the maintenance of a person's livelihood, "[s]uspension of issued licenses…involves state action that adjudicates important interests of the licensees."[47] Therefore, once issued, a license or permit cannot be taken away by the State without due process.[48] "[T]o determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate."[49] The Supreme Court has held that "[t]he fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner."[50] In most cases, "a meaningful time" means prior to the deprivation of the liberty or property right at issue.[51]

North Atlantic argues that "[n]o reasonable official who could read English would believe he had the power" to revoke North Atlantic's license for a "minor violation" "without a vote from the Board and then notify[] all the customers of North Atlantic that it could no longer work in Louisiana and to get another company."[52] Because North Atlantic has not shown a clearly

---

[44] *Kisela*, 138 S.Ct. at 1153, quoting *Plumhoff v. Rickard*, 572 U.S. 765, 134 S. Ct. 2012, 2023 (2014).

[45] *Kisela*, 138 S.Ct. at 1153.

[46] *Brousseau*, 543 U.S. at 199, citing *Hope v. Pelzer*, 536 U.S. 730, 738 (2002)

[47] *Bell v. Burson*, 402 U.S. 535, 539 (1971); *see also Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 543 (1985) ("We have frequently recognized the severity of depriving a person of the means of livelihood.").

[48] *Bell*, 402 U.S. at 539.

[49] *Zinermon v. Burch*, 494 U.S. 113, 126 (1990).

[50] *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (quotation marks and citation omitted).

[51] *Zinermon*, 494 U.S. at 127; *see also Caine v. Hardy*, 943 F.2d 1406, 1411–12 (5th Cir.1991) ("Ordinarily, government may effect a deprivation only after it has accorded due process ....").

[52] R. Doc. 54, pp. 8-9 (cleaned up).

established federal right that Blache violated by sending the cease-and-desist order, Blache is entitled to qualified immunity.[53]

A right is "clearly established" only if it "is sufficiently clear that every reasonable official would have understood that what he is doing violates that right."[54] We must define the right "with specificity."[55] Ultimately, "[t]he dispositive question is whether the violative nature of the *particular* conduct is clearly established."[56] We undertake that inquiry "'in [the] light of the specific context of the case, not as a broad general proposition.'"[57] The question is, therefore, whether it was clearly established that Blache could not issue a cease-and-desist order to North Atlantic prior to a hearing. It was not.

North Atlantic's reliance on Louisiana's statutory and regulatory scheme to show the clearly established right(s) that Blache is alleged to have violated is misplaced. The Supreme Court has held that "[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision."[58] In so holding, the Supreme Court explained the concerns with holding state officials to a different standard:

> Nor is it always fair, or sound policy, to demand official compliance with statute and regulation on pain of money damages. Such officials as police officers or prison wardens, to say nothing of higher level executives levels [sic] who enjoy only qualified immunity, routinely make close decisions in the exercise of the broad authority that necessarily is delegated to them. These officials are subject to a plethora of rules, "often so voluminous, ambiguous, and contradictory, and in such flux that officials can only comply with or enforce them selectively." *See* P. Schuck, Suing Government

---

[53] Courts have discretion to analyze in either order whether the official violated a constitutional right and whether that right was clearly established at the time of the challenged conduct. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011).
[54] *Mullenix v. Luna*, 577 U.S. 7, 11 (2015), citing *Reichle v. Howards*, 566 U.S. 658, 664, 132 S.Ct. 2088, 2093 (2012).
[55] *City of Escondido v. Emmons*, —— U.S. ——, 139 S.Ct. 500, 503 (2019) (per curiam) (citation and quotation marks omitted).
[56] *Mullenix*, 577 U.S. at 12, citing *al-Kidd*, 563 U.S. at 742.
[57] *Id.*, quoting *Brosseau*, 543 U.S. at 198.
[58] *Davis v. Scherer*, 468 U.S. 183, 194 (1984). ("In the present case, as we have noted, there is no claim that the statue regulation itself or the laws that authorized its promulgation create a cause of action for damages or provide the basis for an action brought under § 1983.").

10

> 66 (1983). In these circumstances, officials should not err always on
> the side of caution. "[O]fficials with a broad range of duties and
> authority must often act swiftly and firmly at the risk that action
> deferred will be futile or constitute virtual abdication of office."
> *Scheuer v. Rhodes*, 416 U.S., at 246, 94 S.Ct., at 1691.[59]

*Davis* holds that state laws and regulations cannot, alone, establish constitutional rights that are not themselves clear considering preexisting federal law. Based on *Davis*, the Fifth Circuit has held that "allegations about the breach of a statute or regulation are simply irrelevant to the question of an official's eligibility for qualified immunity over the deprivation of a constitutional right. This question must be answered solely by an inquiry into whether the constitutional right at issue was clearly established at the time of the events in question."[60] North Atlantic relies only on state statutory and regulatory provisions for its argument that Blache did not have the authority to issue the cease-and-desist order.[61] Accordingly, North Atlantic has not put forward sufficient evidence to establish that the constitutional right Blache is alleged to have violated was clearly established.

Even if this Court were to rely on the Louisiana statutory and regulatory provisions governing the Board, the extent of Blache's power under these provisions to issue a cease-and-desist order is not answered conclusively, which warrants granting qualified immunity. While it is

---

[59] *Davis*, 468 U.S. 183, 194–96. *See also Whitt v. Stephens County*, 236 Fed.Appx. 900, 902 (5th Cir. 2007) (finding that failure of individual officers and the jail to follow protocols mandated by Texas law and adopted by the Texas Commission on Jail Standards did not result in forfeiture of qualified immunity because violations of state law are not actionable under § 1983 and "administrative protocols do not establish constitutional rights…."; *Burney v. Carrick*, 170 F.3d 183 (5th Cir. 1999), citing *Ebmeier v. Stump*, 70 F.3d 1012, 1012-13 (8th Cir. 1994) ("We take this opportunity to emphasize that violations of state laws, state-agency regulations, and more particularly, state-court orders, do not by themselves state a claim under 42 U.S.C. 1983. Section 1983 guards and vindicates federal rights alone."); and *Price v. Brittain*, 874 F.2d 252, 261-62 (5th Cir. 1989) (rejecting argument that facility's employee handbook made the contours of his procedural due process rights clear, citing *Davis*).
[60] *Gagne v. City of Galveston*, 805 F.2d 558, 560 (5th Cir. 1986).
[61] Indeed, it is likely that no additional applicable federal law exists as a search of the relevant state statutory provisions yielded only two cases—an earlier opinion in this case, and in *Fetty v. The Louisiana State Board of Private Security Examiners, et al.*, Civil Action No. 18-517 (M.D. La.), which is discussed below.

true that only the Board is given express authority to revoke a private security license,[62] Blache

has submitted evidence that the custom and practice of his predecessor, Wayne Rogillio, was that

Rogillio, rather than the Board, issued cease-and-desist orders, that Blache continued that tradition,

and that the Board did not issue cease-and-desist orders during Rogillio's 21 year tenure or during

Blache's 6 year tenure.[63] This evidence is unrefuted by North Atlantic.[64]

North Atlantic has alleged that Blache "issued an immediate cease and desist order and

revocation of North Atlantic's license to operate in Louisiana."[65] Blache says that the Board "did

not question [his] authority to issue the cease-and-desist order [he] issued to North Atlantic

Security Company [in 2018]" and the order was issued "based upon the established practice of the

Board and [Blache's] understanding of the relevant rules which provide that a license can be

revoked before a hearing when the registrant carries an unauthorized weapon."[66] What is not clear

---

[62] *See* La. R.S. § 37:3274(A)(4)("The **board** shall: Issue, suspend, modify or **revoke licenses** or registration cards to provide private security in the state of Louisiana."); La. R.S. § 37:3288(A)(1)("Any person who is determined by the board, after reasonable notice and opportunity for a fair and impartial hearing held in accordance with the Administrative Procedure Act, to have committed and egregious act that is a violation of this Chapter or regulation or rule issued thereunder…shall subject such person to revocation of his license."); La. Admin. Code. Tit. 46, Pt. LIX, § 601(A)("**Before revoking** or suspending **a license**…or imposing fines or costs over $500, **the board** will afford the applicant an opportunity for a hearing after reasonable notice of not less than 15 days, except…when a registrant is found carrying an unauthorized weapon while performing the duties of a security officer."); La. Admin. Code tit. 46, Pt. LIX, § 901(A)("Any person who is **determined by the board**, after reasonable notice and opportunity for a fair and impartial hearing…to have committed an act that is a violation of R.S. 37:3270, et seq., or any rule herein, **is subject to…revocation of a license**…"); La. R.S. § 37:3289 ("A. The **board…may…revoke…any license** issued under this Chapter for good cause shown…C. Four concurring votes of the board shall be required for the revocation of any license…D. Any certificate or license…revoked…by the board may be reinstated by majority vote of quorum."); La. Admin. Code Tit. 46, Pt. LIX, § 801 ("**The board** may deny an application, suspend, **revoke,** or restrict **a license** upon the vote of four concurring members when it finds that the licensee or business entity is unsuitable for the purpose of its license or endangers the health, safety, or welfare of the citizens of this state."); La. Admin. Code. Tit. 46, Pt. LIX, § 603 ("All final decisions and orders of the board shall be in writing and signed by the executive secretary or chairperson.") (all emphasis added).
[63] R. Doc. 50-2 (SUMF), at ¶¶ 10-11, 22-26; R. Doc. 50-3, p. 11 (Declaration of Wendy Aldridge), ¶¶11-12; R. Doc. 50-3, p. 13 (Declaration of Fabian Blache, III), ¶7. The actual cease-and-desist order issued to North Atlantic was not put into evidence by either party. North Atlantic alleges that on August 14, 2018, "Blache issued an immediate cease and desist order and revocation of North Atlantic's license to operate in Louisiana."  R. Doc. 25, ¶¶ 10-12. Blache admits he issued a cease-and-desist order to North Atlantic in 2018. R. Doc. 50-3, p. 13, at ¶ 11. It appears undisputed that Blache issued a cease-and-desist order to North Atlantic on August 14, 2018.
[64] *See* R. Doc. 54-1, ¶¶ 22-26.
[65] R. Doc. 25, ¶ 12.
[66] R. Doc. 50-3, p. 13, at ¶¶ 11-12.

is whether a cease-and desist-order and a revocation are different. While North Atlantic implies that these are different,[67] it does not provide any summary judgment evidence to establish that fact.[68]

Although federal due process protections generally require notice and meaningful opportunity to be heard, North Atlantic has not shown that Blache should be deprived of qualified immunity for issuing a cease-and-desist order that operated at least as a temporary revocation of North Atlantic's license prior to a Board hearing. La. Admin. Code Tit. 46, § 601 provides an exception for general notice requirements that "Before revoking…a license…the board will afford the applicant an opportunity for a hearing after reasonable notice of not less than 15 days, except…when a registrant is found carrying an unauthorized weapon while performing the duties of a security officer." In the summary judgment evidence and argument, the only case cited that addresses the extent of state law on revocation of a private security license was decided after the incident that forms the basis of North Atlantic's claims, and it was determined in that case that Blache was entitled to qualified immunity for issuing a cease-and-desist order and revoking another private security company's license prior to a Board hearing in connection with a similar allegation that unauthorized persons were found carrying weapons.

In *Fetty v. The Louisiana State Board of Private Security Examiners, et al.*, Civil Action No. 18-517 (M.D. La.), a private security company, Delta Tactical LLC ("Delta Tactical"), and its sole and managing member, Nicholas Fetty ("Fetty"), sued the Board, Blache, individual members

---

[67] *See* R. Doc. 54, pp. 8-9 ("In our case, Fabian Blache violated black letter law in several respects. The first is LRS 37:3289, which vests the Board of Private Security Examiners the power to revoke a license. Blache could order a cease-and-desist order, but he went further, revoking the license without a vote from the Board and then notifying all the customers of North Atlantic that it could no longer work in Louisiana and to get another company.  This is all before any hearing was allowed.").

[68] To the extent the cease-and-desist order to North Atlantic instructed North Atlantic to cease and desist doing business as a private security company in the State of Louisiana, which is what is implied, it is not clear how this would be effectively different than at least a temporary revocation of North Atlantic's license. *See, e.g.*, R. Doc. 50-3, pp. 16-17 (cease-and-desist order issued by Blache to Delta Tactical, LLC).

of the Board, and the Louisiana Attorney General for violations of their rights under the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution. In *Fetty*, Blache issued a cease-and-desist order purporting to revoke the license issued by the Board to Fetty and/or Delta Tactical.[69] As here, the plaintiffs in *Fetty* alleged that they were deprived of reasonable notice and an opportunity to be heard prior to the license revocation.[70] Blache was ultimately determined by this Court to be entitled to qualified immunity for his actions as to Fetty and Delta Tactical. In so holding, this Court stated, "It is undisputed that on October 13, 2017 Blache and others inspected Delta and discovered, (A) that several Delta officers were carrying firearms despite being unauthorized to do so and (B) that Delta security officers were carrying expandable batons that were not approved by the Board…Thus, contrary to Plaintiffs' position, Blache's pre-hearing deprivation was justified under Louisiana law and at the very least, existing precedent did not place this matter beyond debate."[71] *Fetty* was decided on August 5, 2021,[72] well after the actions that form the basis of North Atlantic's claims in this case. Moreover, in *Fetty* this Court determined that Blache's conduct in issuing a cease-and-desist order and revoking a private security company license prior to affording notice and an opportunity to be heard pending the outcome of a Board hearing did not violate procedural due process rights where Blache had reasonable grounds to do so because of public safety concerns associated with a registrant who is found carrying an unauthorized weapon while performing the duties of a security officer.

It is undisputed that Blache had the statutory authority to "sign off" on cease-and-desist orders; that the custom of the agency was for the Executive Secretary (here, Blache) to issue cease-and-desist orders; that Lands was found on August 11, 2018 in possession of a weapon while

---

[69] *Fetty*, No. 18-517 (M.D. La.), R. Doc. 55, ¶ 8.
[70] *Fetty*, No. 18-517 (M.D. La.), R. Doc. 55, ¶¶ 11-16.
[71] *Fetty*, No. 18-517 (M.D. La.), R. Doc. 108, pp. 20-21.
[72] *Fetty*, No. 18-517 (M.D. La.), R. Doc. 105.

working for North Atlantic, although his certification to carry that weapon had lapsed; and that this Court has previously determined that existing precedent did not place beyond debate that a pre-deprivation hearing is necessary when a registrant is found carrying an unauthorized weapon while performing the duties of a security officer, based on the exception in La. Admin. Code Tit. 46, § 601. Under these circumstances, North Atlantic has not shown that Blache violated a clearly established federal right by issuing a cease-and-desist order related to Lands' carrying a weapon while performing the duties of a security officer for North Atlantic after his certification to do so had expired, even to the extent that order effectively operated as a temporary revocation of North Atlantic's license without a pre-deprivation hearing.[73]

### C.  Blache Did Not Address His Contact with North Atlantic's Clients and Fact Issues Preclude Summary Judgment

North Atlantic has consistently alleged that on the same day Blache issued the cease-and-desist order, he contacted North Atlantic's customers (to whom North Atlantic was providing private security services pursuant to contracts that North Atlantic bid on and won)[74] to advise that North Atlantic could no longer work in Louisiana because its license was revoked.[75] Blache has not disputed, contradicted, or even addressed this allegation in the Motion. Because qualified immunity requires evaluation of the particular conduct in question, Blache's decision to advise North Atlantic's clients that North Atlantic's license was revoked prior to a Board hearing must be considered separately from the issuance of the cease-and-desist order. Although Blache does

---

[73] Because North Atlantic has not shown a clearly established federal right, it is not necessary to address the other prong of the qualified immunity analysis --whether Blache's conduct violated a constitutional right.

[74] *See* R. Doc. 50-2, ¶¶ 41-48, 51; R. Doc. 54-1, ¶¶ 41-48, 51.

[75] *See* R. Doc. 1-2, ¶ 17 ("The damage, however, had already been done. By the end of August, 2018, North Atlantic had been destroyed as a viable company in Louisiana. Blache had unilaterally revoked its license without a hearing or vote of the board, notified all its customers that North Atlantic could not work in Louisiana, and North Atlantic lost millions of dollars in revenue without even being able to timely plead its case.); and R. Doc. 25, ¶¶ 12 & 13 ("On the same day, Blache issued an immediate cease and desist order and revocation of North Atlantic's license to operate in Louisiana. He then notified all North Atlantic's clients that North Atlantic's license was revoked. Immediately, the clients began scrambling to get other security companies to take over the North Atlantic contracts.").

not specifically analyze or address the allegation that he contacted North Atlantic's clients prior to the Board hearing, because he generally asserts that qualified immunity bars North Atlantic's procedural due process claims, he has sufficiently pleaded qualified immunity as to this conduct.[76] To overcome this defense, the record must establish that Blache advising North Atlantic's customer's that North Atlantic's private security license was revoked violated a federal right that was clearly established at the time.[77]

The Supreme Court has held that "either the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process, *when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking*…satisf[ies] the requirements of procedural due process."[78] It has long been held that "some form of hearing" is required before one is finally deprived of a protected property interest.[79] Having found that Blache is not deprived of qualified immunity for issuing a cease-and-desist order prior to a Board hearing under the particular facts of this case, the next issue is whether Blache is entitled to qualified immunity for advising North Atlantic's clients of the license revocation before the Board hearing.

---

[76] *Kovacic v. Villarreal*, 628 F.3d 209, 211-12 (5th Cir. 2010) ("Where, as here, a section 1983 defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff then has the burden 'to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law.'"). To the extent Blache seeks absolute immunity, he would not be entitled as to this conduct, which appears to have been administrative in nature. When an official's activities are those of an administrative or investigative officer, he is no longer entitled to absolute immunity. *Disraeli v. Rotunda*, 489 F.3d 628, 635 (5th Cir. 2007) (citation omitted) (cleaned up).

[77] *Cloud v. Stone*, 993 F.3d 379, 383 (5th Cir. 2021).

[78] *Hudson v. Palmer*, 468 U.S. 517, 531–32 (1984), citing *Parratt v. Taylor*, 451 U.S. 527, 539 (1981) (footnote omitted) (emphasis supplied).

[79] *Board of Regents v. Roth*, 408 U.S. 564, 570-71, n.8 (1972).

###### 1. *A Reasonable Jury Could Conclude Blache's Conduct Violated a Constitutional Right*

The hallmark of procedural due process is notice and a meaningful opportunity to be heard prior to a final deprivation of a property interest. This Court has previously determined that North Atlantic had a property interest in its private security license.[80] A reasonable jury could conclude that Blache's conduct violated North Atlantic's right to procedural due process when viewing the facts and inferences most favorably to North Atlantic.[81]

Where, as here, pretermination safeguards were abandoned, the substantial private interest one has in not being deprived of its livelihood requires a full hearing after termination.[82] Moreover, the Due Process Clause requires the post-termination hearing to be held "at a meaningful time."[83] "At some point, a delay in the post-termination hearing would become a constitutional violation."[84]

Blache issued the cease-and-desist order to North Atlantic on August 14, 2018. On August 23, 2018, the OSP issued an Invitation to Bid on the contracts previously held by North Atlantic.[85] The Board hearing on North Atlantic's license was not held until September 6, 2018.[86] First, it is not clear whether the Board rendered a decision on North Atlantic's license revocation at the September 6 hearing; if so, what the Board's decision was; nor is there evidence of the basis of any decision, as no party submitted evidence on this issue. However, the summary judgment evidence before the Court does show that nine days after Blache issued the cease-and-desist order and contacted North Atlantic's clients, OSP reopened bidding on the contracts previously held by North Atlantic. Those contracts were awarded to Gulf Coast Security, though it is not clear when.

---

[80] *See* R. Doc. 42, § B(1), at pp. 10-11 ("It is clear from the foregoing that North Atlantic has a constitutionally-protected property interest in its previously-approved license to operate a private security business.").
[81] *Cunningham v. Castloo*, 983 F.3d 185, 190-91 (5th Cir. 2020).
[82] *Schaper v. City of Huntsville*, 813 F.2d 709, 716 (5th Cir. 1987), citing *Loudermill*, 105 S.Ct.. at 1496.
[83] *Loudermill,* 470 U.S. at 547, citing *Armstrong v. Manzo*, 380 U.s. 545, 552 (1965).
[84] *Id.*
[85] R. Doc. 50-6.
[86] R. Doc. 50-3, p. 3.

The allegation by North Atlantic is that the same day Blache issued the cease-and-desist order, he contacted North Atlantic's clients to advise they needed to find a new private security company because North Atlantic's license had been revoked. This information appears to be supported by the summary judgment evidence that North Atlantic's contracts were submitted for bid by other companies prior to the Board hearing, so that, by the time North Atlantic received a hearing before the Board, it may have already lost all its contracts.[87] Although Blache argues that OSP acted independently of him, that does not address North Atlantic's allegation that Blache told its clients to find a new security company the same day the cease-and-desist order was issued. There is also no evidence in the record as to what caused OSP to issue the invitation to bid on North Atlantic's contracts.[88] Accepting the truth of North Atlantic's version of the facts, as supported by the summary judgment evidence, and viewing those facts and inferences most favorably to North Atlantic, a reasonable jury could conclude that Blache's decision to advise North Atlantic's clients that North Atlantic's license had been revoked, prior to a Board hearing, effectively operated as a final revocation such that North Atlantic was deprived of the right to a meaningful hearing at a meaningful time.

---

[87] Blache has not argued or established what the process would have been to restore North Atlantic's contracts, if such a process existed.

[88] The following evidence is absent from the record: (1) the cease-and-desist letter and/or notice of revocation issued by Blache to North Atlantic; (2) a final decision or order of the Board regarding North Atlantic's license, which is required to be "in writing and signed by the executive secretary or chairperson" under 46 La. Admin. Code. Pt. LIX, § 603; (3) what, if any, "reasonable notice" was provided to North Atlantic by the Board prior to revocation as required by La. R.S. 37:3288; (4) whether the Board "affirmed" Blache's revocation of North Atlantic's license; or (5) whether four concurring members of the Board actually voted to revoke North Atlantic's license as required by § 3288, as that information is not contained in the transcript of the September 6, 2018 hearing submitted as evidence. Genuine issues of material fact preclude a determination of whether there was a meaningful hearing at a meaningful time.

    2.   *The Right to Be Free of Interference with Client Relations Prior to Final*
        *Termination Was Clearly Established*

In an obvious case, a plaintiff need not point to analogous case law because the unlawfulness of the challenged conduct is clear notwithstanding a lack of existing precedent.[89] It is clearly established that North Atlantic had a right to a meaningful hearing before their private security company license was permanently revoked. No reasonable person in Blache's position would have believed that a subsequent Board hearing would provide an adequate post-deprivation remedy if North Atlantic had already lost all its client contracts.[90] Further, unlike Blache's

---

[89] *Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020), quoting *District of Columbia v. Wesby*, --- U.S. ---, 138 S.Ct. 590 (2018).

[90] *Fetty* would not appear instructive as to this conduct as client contact was not raised as a basis for the constitutional violation by the plaintiffs in that case. *But see Leland v. Mississippi State Bd. of Regis. For Prof. Engineers and Land Surveyors*, 35 F.3d 559 (5th Cir. 1994) (unpub.) (holding that the "importance of [plaintiff's] interest in his professional license required that he be able to present argument before" he was finally deprived of that interest, and noting that the "possibility that the defendants might not have accepted [plaintiff's] theory had they used proper procedure [prior to deprivation] does not excuse them from following that procedure") and *Spinelli v. City of New York*, 579 F.3d 160, (2nd Cir. 2009) (holding that plaintiff was deprived of due process when her business license was suspended for 58 days; post-deprivation hearing was not meaningful where suspension resulted in plaintiff's business being unable to operate for about two months), which are instructive. In *Spinelli*, the plaintiff owned Olinville Arms, Inc. ("Olinville"), a "gun shop, shooting range, and travel agency" located in Bronx City. Olinville possessed a license issued by the New York City Police, which was "conditioned upon compliance with [certain] regulations…that require gun dealers to adhere to certain security restrictions and provide that the licensee's "premises and firearms[] shall be subject to inspection at all times by members of the Police Department." A licensee's license may be "revoked or suspended" for "good cause" for failing to comply with the regulations. On October 1, 2001, Olinville was searched, and the search revealed Olinville's security to be "grossly inadequate." Olinville's license was suspended the next day, and it had to surrender all firearms pending the investigation, which would determine whether its license was "continued, suspended, or revoked." Plaintiff retained counsel, who pursued informal negotiations and conversations with the Police Department because the request a formal hearing could take "months to years to decide." Informal negotiations proved fruitful, and plaintiff's license was reinstated on December 5, 2021. Plaintiff filed suit against the city under § 1983 alleging that suspension her license "without providing the 'required notice or hearing'" violated her due process, which resulted in her "loss of approximately two months of sale and profits." The district court granted summary judgment to the City on plaintiff's pre- and post-deprivation due process claims. However, on appeal, the Second Circuit affirmed the district's courts granting of summary judgment as to the pre-deprivation due process claim but reversed the district court on the post-deprivation claim and remanded the case to the district court with instructions to "enter summary judgment in favor of [plaintiff] on [her] due process claim and for the calculation of damages to be awarded…on that claim." In so holding, the Second Circuit considered the *Matthews* factors in the context of plaintiff's post-deprivation due process claim and found that even though plaintiff's license was reinstated 58 days after it was suspended, plaintiff was not provided "adequate notice of a meaningful opportunity to be heard in a sufficiently timely manner." *Id.* 171- 75, citing *Mathews v. Eldridge*, 424 U.S. 319, 334-35 (explaining that the "specific dictates of due process generally require consideration of three district factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Governments interest…"). In discussing the second *Mathews* factor, the Second Circuit repeatedly noted that

arguments with regard to a pre-deprivation hearing, the record evidence does not establish a custom and practice by Blache or Rogillio of contacting customers prior to permanent revocation of a license, nor does Blache argue that the applicable state regulatory scheme permits such conduct.[91]

### D.    Blache is Entitled to Qualified Immunity on North Atlantic's Eighth Amendment Excessive Fines Clause Claim

Blache argues that North Atlantic's claim under the Eighth Amendment Excessive Fines Clause fails because he is entitled to qualified immunity considering that "any rights under the Excessive Fines Clause were not clearly established at the time of Blache's conduct."[92] Specifically, Blache contends that "the controlling authority existing at that time [of the conduct about which North Atlantic complains] was that the Excessive Fine Clause of the Eighth Amendment did not apply to the states."[93] While Blache acknowledges that the Supreme Court recently held in *Timbs v. Indiana*[94] that the Excessive Fines Clause of Eighth Amendment applies to the states, he argues that *Timbs* has "no bearing on the outcome of this case because it was not decided until February 20, 2019, or approximately six months after the events giving rise to [North Atlantic's] claim."[95] Because North Atlantic's rights under the Excessive Fines Clause were not

---

plaintiff's "private interest was strong, and the City's delay is providing [plaintiff] will a prompt hearing while her business was closed threatened significant financial loss of an extended period." The Second Circuit further explained that because "even a brief and provisional deprivation of property pending judgment is of constitutional importance," "once the City took possession of [plaintiff's] property, it was incumbent upon the City to provide a prompt hearing." *Id*. at 174 (internal quotations and citations omitted).

[91] For the same reasons, Blache is not entitled to qualified immunity on North Atlantic's punitive damages claim at this juncture because a reasonable jury viewing that same evidence could also conclude that Blache was "callously indifferent" to North Atlantic's federally protected right to a meaningful post-deprivation hearing even if, as here, a pre-deprivation remedy was not required.

[92] R. Doc. 50-1, p. 4

[93] *Id*. at pp. 5, citing *Cripps v. La. Dept. of Agric. & Forestry*, 819 F.3d 221, 234-35 (5th Cir. 2016) ("echo[ing] prior Supreme Court and Fifth Circuit precedent: first, the Eighth Amendment does not apply of its own force to the States, and second, "[w]eve never have decided whether…the Eighth Amendment's prohibition of excessive fines applies to the States through the Due Process Clause," and finding that plaintiff's Eight Amendment claim failed because of this." (internal citations omitted)).

[94] 139 682, 686-87 (2019).

[95] *Id*. at pp. 5-6.

"clearly established" at the time Blache levied a fine on North Atlantic, he contends that he is entitled to qualified immunity.[96]

In response, North Atlantic, relying heavily on *Timbs*, argues that "the historical and logical case for concluding that the Fourteenth Amendment incorporates the Excessive Fines Clause is overwhelming."[97] Further, North Atlantic notes that "[a]s Indiana conceded in *Timbs*, all 50 states have a protection against excessive fines or punishment," which is found in Article 20 of the Declaration of Rights section of the Louisiana Constitution of 1974.[98] According to North Atlantic, because a similar provision prohibiting excessive fines was included in Article 8 of the Louisiana Constitution of 1968, "Blache individually, and Louisiana, generally, has known for at least 150 years, that the state may not subject anyone to excessive fines or punishment," such that Blache should have known that the right against excessive fines was clearly established.[99] Finally, North Atlantic argues that because Lands was not carrying an "unauthorized weapon," as Blache concluded, the $9,500 fine imposed by Blache (as opposed to the a $100 fine under La. R.S. 37:3288.B), plus the "millions of dollars in lost revenue," was "absurdly excessive, is a question for the jury, and is not ripe for summary judgment."[100]

Here, North Atlantic has not carried its burden of establishing that Blache's qualified immunity defense is inapplicable to its claims under the Eighth Amendment. North Atlantic has

---

[96] Blache also contends that this claim should be dismissed on the merits, considering (1) that a sanction is only a "fine" under the Eighth Amendment when it is "payable to the sovereign," which is not the case here; (2) that lost contracts and/or revenue are not "fines"; and (3) that the $9,500 fine levied against North Atlantic was not excessive because with was "within the limits of the statutorily provided for penalties." R. Doc. 50-1, pp. 15-16.

[97] R. Doc. 54, pp. 1-6.

[98] *Id*. at p. 4. *See also* La. Const. Art. 1, § 20 (Right to Human Treatment) ("Section 20. No law shall subject any person to euthanasia, to torture, or to cruel, excessive, or unusual punishment. Full rights of citizenship shall be restored upon termination of state and federal supervision following conviction for any offense.").

[99] *Id*. at pp. 4-5 (quoting Article 8, which provided, "Excessive bail shall not be required; excessive fines shall not be imposed; nor cruel and unusual punishments inflicted."), accessible through the Hathi Trust Digital Library at https://babel.hathitrust.org/cgi/pt?id=loc.ark:/13960/t9w10bd3n&view=1up&seq=11&skin=2021 (last accessed 9/28/22).

[100] *Id*. at pp. 5-6 (cleaned up).

not shown that the right to be free from excessive fines was "clearly established" *at the time* Blache levied the fines against it. While neither party disputes that *Timbs* has now placed the issue of whether the Excessive Fines Clause applied to the states "beyond debate," *Timbs* was not the law at the time of Blache's conduct. Rather, at the time Blache levied a fine against North Atlantic, existing Fifth Circuit authority explained in no uncertain terms that neither that Court nor the Supreme Court had ever held that the Excessive Fines Clause applied to the states.[101] Instead of addressing this authority, North Atlantic quotes liberally from, and relies heavily on, *Timbs*. But *Timbs* was not in place at the time of Blache's actions, and a 2019 Supreme Court opinion cannot be considered "existing precedent" as to a fine levied in 2018.[102]

Because the right was not clearly established, Blache is entitled to qualified immunity on this claim. Thus, Plaintiff's Eighth Amendment Excessive Fines Clause gfaclaim will be dismissed with prejudice.[103]

## III. CONCLUSION

Any rights under the Eighth Amendment's Excessive Fines Clause were not clearly established at the time Defendant Fabian Blache, III, imposed a fine on Plaintiff North Atlantic Security Company. Thus, Blache is entitled to summary judgment on his qualified immunity defense as to this claim. Similarly, Blache is entitled to qualified immunity on North Atlantic's due process claim related to the cease-and-desist order because North Atlantic has not shown a clearly established federal right that Blache violated by sending the cease-and-desist order.

---

[101] *See, e.g., Cripps*, 819 F.3d at 234-35.

[102] *See Kisela*, 138 S.Ct. 1148, 1152 (2018) ("Although 'this Court's caselaw [on qualified immunity] does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate.'" (citations omitted)). *See also Davis v. Hodgkiss*, 11 F.4th 329, 333 (5th Cir. 2021) ("The officer will be entitled to qualified immunity…if the conduct 'did not violate law clearly established at the time.'" (citations omitted)).

[103] Because the Court finds that Blache is entitled to qualified immunity on this claim, the Court need not resolve the issue of whether the fines imposed on North Atlantic were excessive.

However, genuine issues of material fact preclude resolution of North Atlantic's federal and state procedural due process claims, as well as punitive damages claim against Blache, with regard to Blache's actions in advising North Atlantic's customers of the license revocation prior to the Board hearing.

Accordingly,

**IT IS ORDERED** that the Motion for Summary Judgment,[104] filed by Defendant Fabian Blache, is **GRANTED IN PART AND DENIED IN PART**. Because Blache is entitled to qualified immunity on North Atlantic's Eighth Amendment Excessive Fines Clause claim and its Fourteenth Amendment procedural due process claim with respect to the cease-and-desist order, Blache's Motion is **GRANTED** with respect to those claims, and those claims are **DISMISSED WITH PREJUDICE**. Blache's Motion is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that the Clerk of Court is instructed to **STAY AND ADMINISTRATIVELY CLOSE** this case to permit the parties to evaluate amicable resolution.[105]

**IT IS FURTHER ORDERED** that by no later than **January 5, 2023**, the parties shall file either: 1) the joint notice of settlement required under Local Civil Rule 16(c), if they are able to resolve North Atlantic's remaining claims; or 2) a joint motion requesting a new trial date.

Signed in Baton Rouge, Louisiana on September 29, 2022.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[104] R. Doc. 50.
[105] Judge Bourgeois canceled the parties' previously scheduled settlement conference, in part, pending resolution of the Motion.  R. Doc. 56.